TEXAS & P. RY. CO. v. ALLEN et al.

(Circuit Court of Appeals, Fifth Circuit. February 25, 1902.)

No. 1,099.

MASTER AND SERVANT—DEFECTIVE RAILROAD CAR—DUTY OF INSPECTION.

An instruction defining the inspection required to be made by a railroad company to exonerate it from liability for an injury to a brakeman resulting from a defective handhold on a freight car considered and approved.

In Error to the Circuit Court of the United States for the Northern District of Texas.

114 F.—12

Mr. Thompson and T. J. Freeman, for plaintiff in error.

R. L. Carlock, for defendants in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PER CURIAM. This is a suit brought by the widow and father and mother of one A. T. Allen, deceased, to recover damages from the Texas & Pacific Railway Company by reason of the negligence of said company, resulting in the death of said A. T. Allen, the same being caused by the said Allen falling from the side of a freight car while in the performance of his duties as a brakeman. The grounds of negligence relied upon are (1) in not having the proper kind of fastenings for the handhold on the car,—that is, in having used in the fastenings what is known as "lag" or "wood" screws instead of iron bolts with a nut on the end; (2) in not properly inspecting the car to see that the handholds were kept in reasonably safe condition. The bill of exceptions shows that evidence was offered tending to show that the deceased, Allen, fell from a car while the train was moving because a handhold was not securely fastened; and further tending to show that the lag screws with which the handhold was fastened were either not properly screwed in the wood, or that the wood of the car was decayed, thereby rendering the handhold insecure. There was also evidence tending to show that within a short time prior to the death of Allen the car had been inspected in the yards of the company at Baird and at Thurber Junction, division terminals, and also evidence tending to show the nature and character of the inspection made.

The trial judge charged the jury fully upon all the law applicable to the case, and to such charge no objection was made. After the jury had retired and for some time had considered their verdict, they returned into the court, and through their foreman requested the court to further define the term "inspection," as that term was used in the court's charge with reference to the duty of the defendant railway company towards the deceased, and thereupon the court made the following additional charge:

"Inspection, gentlemen, as used in the court's charge, is an inquiry, by actual observation, into the state, efficiency, safety, and quality of the thing inspected. Inspection of the appliances and instrumentalities in use by a railway company should not rest alone upon the vision, because there are many defects, the existence of which could be ascertained by reasonable and ordinary tests which involve the exercise of senses other than the sense of vision. I should say the railway company would be liable for those defects in its appliances and instrumentalities which, in the course of inspection, could be perceived; that is, capable of coming under the cognizance of any one or more of the senses of man in the exercise of ordinary care. Inspection not only involves looking at cars and appliances, but as well all those tests which would ordinarily be used to ascertain the condition of cars and appliances that a reasonably prudent man would use in the exercise of such an undertaking."

When this instruction was given, the defendant railway company duly excepted, and before the jury retired requested the court to specially charge the jury as follows:

"The court instructs the jury that the duty of a railroad company toward a servant in its employ is to exercise ordinary care to furnish such ap-

pliances as are reasonably safe for the use for which they are intended, and, within the meaning of the law, such appliances are considered as reasonably safe that are in the general, usual, and ordinary course adopted by those in the same business; and therefore if you find from the evidence that the handhold, which is alleged to have been pulled out from the car and caused the accident, was of such a character and fastened onto the car in the manner as was in general use and according to the course usually adopted by others in the same business, and that the defendant railway company, by the exercise of ordinary care, could not have discovered any defect in same, then, in such event, the defendant would not be liable to plaintiffs. The court instructs the jury that the plaintiffs cannot presume that the defendant railway company was guilty of negligence from the mere fact that the accident happened, but it is incumbent upon the plaintiffs to show that the accident happened by reason of the negligence of defendant by a preponderance of the evidence, and if a preponderance of the evidence does not establish this fact they will find for the defendant."

These special instructions were refused, and to such refusal exception was duly entered. The special charge given to the jury defining "inspection" is claimed to be erroneous, not because it is incorrect as a matter of law, but because it withdrew from the jury the question of whether the defendant company had exercised a reasonable care in the matter of inspecting the handholds of the car from which the deceased, Allen, fell.

After an attentive consideration of the brief and arguments of the learned counsel for plaintiff in error, we are unable to see wherein and how the instruction and definition given in any wise withdrew any fact from the jury or invaded the province of the jury in determining the facts in the case. The matters contained in the special instructions requested and refused seem to be in the main correct as matters of law, but we find that the judge in his general charge covered the same ground, and, so far as we are able to see, as favorably to the railway company as in the special instructions asked.

The judgment of the circuit court is affirmed.