## VANDALIA RAILROAD COMPANY v. ADAMS.

[No. 6,725.   Filed May 18, 1909.]

1. MASTER AND SERVANT.—*Assumed Risk.—Defective Crowbar.— Railroads.*—A mature servant assumed the risk of a defect in a crowbar which he was using in drawing spikes from a railroad tie, and which crowbar, because of the defect, which was patent, the company having no actual notice thereof, slipped, causing the crowbar to fall upon plaintiff's foot, to his injury.  p. 667.

2. MASTER AND SERVANT.—*Defective Tools.—Duty to Inspect.*— While a higher duty of inspection rests upon the employer than upon the employe, the servants are not excused from exercising ordinary care to discover patent defects.  p. 668.

From Knox Circuit Court; *Orlando H. Cobb,* Judge.

Action by John Adams against the Vandalia Railroad Company. From a judgment for plaintiff, defendant appeals. *Reversed.*

*Samuel O. Pickens, C. B. Kessinger* and *R. F. Davidson,* for appellant.

*A. T. Cobb* and *Cullop & Shaw,* for appellee.

COMSTOCK, P. J.—Appellee recovered judgment for $250, damages for personal injuries sustained by him while employed by the appellant as a section man. The injury was received by a crowbar's falling and breaking one of the bones of his foot. He had started to draw one of the spikes that held the rails of the track in place. The bar had claws or flanges which went partly around and against the head of the spike, and, in pulling down on the handle part of the bar in an effort to draw the spike, the claws slipped off the spike and the bar fell.

The complaint alleges, in substance, that in his work for appellant, it became necessary to use a crowbar, and that he used one furnished by the defendant for the work; that the defendant was negligent in this: that said crowbar was not properly constructed for the work for which it was required to be used, in that "it was made blunt and stubby, its claws were too short, not being of sufficient length and size when put on a spike to grab and hold the same with sufficient tightness to permit it to draw same," and when great effort was used—and such was required in doing such work—the crowbar, on account of its defective construction, would suddenly slip from its grasp on such spike and fly out of the hands of the party using the same and fall to the ground, and it so did on the occasion of plaintiff's using same, falling on his foot and inflicting said injury; that said crowbar was old and worn, which added and aided in its defective condition, causing it to slip the easier from said spike when he attempted to pull the same; that he had never used said crowbar before; that he had no knowledge of its defective con-

dition; and that defendant knew of its defective condition, or could by the exercise of proper diligence have learned of the same.

Appellant's motion for a new trial was overruled, and this action of the court is assigned as error.

For a reversal, appellant relies upon the evidence. The evidence shows that the bar had been used for a year on the section where appellee was working, and that it was used continuously thereafter until taken away by the company to be kept until the trial. It was suitable for drawing spikes. All the section men testified that it was in the same condition when produced at the trial that it was on the day the appellee was hurt and when taken away by the company. Appellee upon rebuttal testified that it had been changed while in the possession of the company before trial. His evidence was contradicted by all of his fellow workmen.

The plaintiff testified that he was twenty-nine years of age and a common laborer; that he began work for the Vandalia Railroad Company in December, 1906; that he had worked for five and one half days when he was injured; that he had previously worked for the Evansville & Terre Haute Railroad Company about six months; that he was working on the section at the time he was hurt; that his work consisted of pulling spikes, driving spikes, shoveling and using the pick; that about a year previously he had worked for the defendant for about two weeks; that he did the same work then that he was doing at the time he was injured; that he was injured on December 19, 1906, at a point about 300 yards south of the union depot in Vincennes, near the crossing of tracks of the Vandalia and the Evansville & Terre Haute railroads; that on the morning the accident happened the section gang went out to the end of the section on a hand-car, and when they were about half way back they stopped and picked up the crowbar, by which appellee was afterwards hurt, from where it was lying in the grass at the side of the track, put it on the car, and brought it to town

to the place where they were at work putting in a new frog at the railroad crossing; that the foreman ordered appellee to take the bar and pull some spikes with it; that it was then lying about five feet from the car, on the ground; that he took the bar up and put it across his shoulder, went up to where he was to pull the spikes, set the crowbar to the side of the spike, and one of the employes hit the bar to knock it against the spike, and as appellee proceeded to pull the spike, the crowbar slipped off and came down across his foot and broke it; that the bar has two prongs in the end, which are called claws; that these claws go around the spike, and come up against the head of the spike, and "then you bear down on the handle and pull the spike;" that he had not seen the crowbar before that day, and on that day did not ex-, amine it until after he was hurt; that when it was put on the car he noticed that it was rusty; that he did not notice the claws or flanges; that he found after he was hurt that the claws had been made too stubby, and, in trying to use it, it had been hammered until the claws were too far apart to hold to the head of a spike. In answer to the question: "How did you proceed to use it on that day?" Appellee answered: "I took the bar and went up to the spike and shoved it up under it, in this way. Then another man hit the back of it, and when he hit I pulled back on it, and it slipped off and came across my foot."

Accepting the evidence of appellee, that the crowbar was defective, it did not show that appellant had actual knowledge of such defect. Appellee's own testimony shows

1. that the slightest examination would have disclosed to him the condition of which he complains, and to which he attributes his injury. This knowledge, so readily within his observation, at least, will hold him to have assumed the risk of the use of the tool. *Kentucky, etc., Bridge Co.* v. *Eastman* (1893), 7 Ind. App. 514; *Jenney Electric, etc., Co.* v. *Murphy* (1888), 115 Ind. 566; *Stuart* v. *New Albany Mfg. Co.* (1896), 15 Ind. App. 184; *Evansville, etc.,*

R. Co. v. Duel (1893), 134 Ind. 156; Ames v. Lake Shore, etc., R. Co. (1893), 135 Ind. 363; Pennsylvania Co. v. Witte (1896), 15 Ind. App. 583; Holt v. Chicago, etc., R. Co. (1896), 94 Wis. 596, 69 N. W. 352; Miller v. Erie R. Co. (1897), 47 N. Y. Supp. 285, 21 Hun, App. Div., 45; Louisville, etc., R. Co. v. Allen (1893), 47 Ill. App. 465.

The defect was patent. The fact that, as a rule, the master has a better opportunity to inspect the machinery or tools, and must use a higher degree of care than his 2. servant, does not release the servant from exercising care, and this is specially true of so simple a tool as a crowbar placed in the hands of the servant, and which can be as readily, if not more readily, inspected by him than by the master. The statement of appellee that he did not know of the defect is vain, when from his own evidence it appears that the slightest examination would have shown the defective condition.

See the cases before cited.

Judgment reversed, with instructions to sustain appellant's motion for a new trial, and for further proceedings in accordance with this opinion.